Patterson, J.
The relator in this proceeding—a street railway corporation—applies for a peremptory writ of mandamus to direct the commissioner of public works of the city and county of New York, to grant to it a written permit or authority to begin immediate excavations along the line of its route, for the purpose of laying cables in each track between the present rails, as motive power, for its cars, such work to be of a similar character to that already done by the relator on One Hundred and Twenty-fifth street in said city, and to be done subject to the supervision of the said commissioner of public works.
It appears by the moving papers, that the relator claims to have a clear legal right to substitute, as motive power for its cars, the use of cables running under the surface of the street, and to which the cars are attached by certain adjustments, and from which they may at will be released, for the ordinary horse power now employed, and it claims that *907 this clear legal right is given by what may be called, for the purposes of this application, its charter.
The right to a peremptory writ depends upon there being nothing involved in the application but a question of law; and the first subject of consideration now presented is: Is there any controversy respecting the material facts upon which the application is founded ? The answering affidavits contain verified statements, which, if insisted upon, would prevent the granting of a peremptory writ, for it is stated in them, in substance, that it is impossible to do the work required to be done to enable the relator to change its system of motive power; and with such a sworn statement appearing, the court would not require that to be done which might eventually prove to be impossible of performance. But this consideration has, since the argument, been eliminated from the case by the written admission of the counsel to the corporation “ that it is not impossible to construct the cable trench mentioned in the affidavits on the part of the relator herein, although the alterations of sewers, water pipes and other subterranean structures, which will be rendered necessary thereby, will be very expensive and difficult.”
It is not for the court at this time to pass upon the difficulties of engineering problems, nor to consider, on the other hand, the alleged benefits to thé public arising from the proposed change. Much has been said of those benefits, and a very strong presentation has been made of the advantages likely to ensue from the substitution of motive power. The great majority of property owners along the line of the relator’s road are desirous of having the substitution made, and there is evidence from the board of health and other sources indicating the wisdom of the change; but the only question now before the court is as to the relator having a clear legal right to make the proposed change, and that depends simply upon the construction of the powers in that regard vested in the relator by what I have called its charter.
The Third Avenue Railroad Company is a corporation created under and pursuant to the general railroad act of April 2, 1850, and in its articles of association, which were filed October 3, 1853, it is stated that the company was formed “ for the purpose of maintaining, operating and finishing the . construction of an unincorporated railroad, already partially constructed, for public use, in the conveyance of persons and property.” The corporation thus organized succeeded to a franchise to construct, maintain and operate a railroad which had vested in certain associates, referred to above as the “ unincorporated railroad,” and these associates derived their right from a grant, made pursuant to a resolution of the common council of the city of New York, passed the 18th day of December, 1852, the specific terms and conditions of the grant being contained in an agreement made between the mayor, aldermen and com *908 monalty of the city of New York, and such associates, on the ] st day of January, 1853.
By the general railroad act of 1850, corporations organized pursuant thereto are empowered “to take and convey persons and property on their railroad, by power or force of steam or animals or by any mechanical power,” and this general provision would be sufficient to authorize the relator to use any of the permitted methods of moving its cars, were it not that in the agreement between the city and the associates above mentioned, and which forms the basis of relator’s right in the matter now under consideration, it is provided as follows: “No steam power to be used on any part of the road for propelling cars.”
There is nothing in the papers before me showing that the relator is confined by any agreement or special law to the use of horse power or animals in drawing its cars. It has authority, under the act of 1850, to use such power or to use mechanical power of any kind; but steam on the road is interdicted by the authority by which the right to operate the road was granted The question then arises : Is the proposed substituted system one which requires or by which it is intended to use steam on the road ? If the prohibitory words mean, as I think they do, that steam machinery shall not be employed as a motive power directly applied to the cars and used on the streets as a means of propulsion, then it is not within the contemplation of the relator to use such machinery. But it is contended by the learned counsel to the corporation that the inhibition is stronger in its restriction, and that it extends to the use of steam at any point or in any way, directly or indirectly, as a means of moving the relator’s cars, and that this construction should be given within the general rule of law that grants of corporate franchises are to be strictly construed against the grantees. This undoubtedly is a general and salutary rule, but it is not to be invoked to diminish a grant plainly made in precise words, nor to extend a restriction beyond what the' terms of that restriction import. • What the relator is prohibited from using is steam power on any part of the road.
It plainly appears in the papers submitted that it is not proposed to use steam on the road at all. Steam is “to be used outside the line of the road for the purpose of turning a ■ drum, thus communicating motion to a cable under the track, and by means of a grip in the car which seizes the cable the motion is communicated to the car.” Do such an appliance and such machinery fairly come within the meaning of the prohibition? The first cause of motion is, of course, the force of steam which turns the drum, but the direct and immediate cause is the running cable to which the car is attached by means of the grip; that mechanical power, although originated by steam, is all that is used on or under the road, the steam engines being stationary at terminal or other points not located on the road. I do not *909 think it necessary to enforce this view by illustrations, although many may be furnished and were referred to on the argument. It is a simple question of the construction to be given to a restriction in a grant of a franchise, and I am of the opinion that the restriction referred to does not prevent the relator from using its cable system, and there being, no other objection advanced than that considered, I think it clear the relator has the legal right to use it.
Attention was called on the argument to section 322 of the consolidation act and to the authority and duty of the department of public works concerning permits to open the streets. The provision of the section referred to, under the circumstances of this case, requires that the work proposed to be done shall be done under the supervision and direction and subject to the reasonable regulations and orders of the department of public works. The interest of the city must be fully protected and guarded by the terms of the order to be entered. As the question involved in this motion is important, and a short delay cannot prejudice the relator, I will grant the application of the counsel to the corporation for a stay of proceedings under the .order to be made herein until the subject can be reviewed by the appellate branch of the court, provided a stipulation is made by the city that the cause be brought on for hearing at the general term, to be held in May next.